Richard Ferry
PO Box 91432
Portland, Oregon 97291
Ph: (503) 336-4913
        Plaintiff, *pro se*

FILED29 OCT '18 11:32USDC-ORP

# IN THE UNITED STATES DISTRICT COURT FOR

## THE DISTRICT OF OREGON

| | |
|---|---|
| RICHARD FERRY, ) | |
| ) | |
| Plaintiffs, ) | Case No. *3:18- CV- 1891-HZ* |
| vs. ) | |
| ) | |
| KEVIN DOOHAN, Washington County ) | VERIFIED COMPLAINT FOR |
| Community Corrections (WCCC) Post- ) | EMERGENCY TEMPORARY |
| Prison Supervision Officer (PPO); ) | RESTRAINING ORDER, INJUNCTION |
| CASSANDRA PETERSON, WCCO PPO; ) | AND PERMANENT INJUNCTION |
| BROOKE VICE, WCCO PPO; ) | (First, Fifth, Ninth, and Fourteenth |
| JOE SIMICH, WCCO, Assistant Director; ) | Amendment) |
| STEVE BERGER, WCCO, Director; and ) | JURY TRIAL DEMANDED |
| JOHN AND JANE DOES, 1-20, ) | |
| ) | |
| Defendants. ) | |

## INTRODUCTION

1.    This is a civil rights action brought by RICHARD FERRY a state prisoner on

Post-Prison Supervision (PPS), pursuant to 42 USC § 1983, for emergency temporary

restraining order (TRO) enjoining Defendants from the actions alleged herein.  Post-prison

Page 1 of 19 VERIFIED COMPLAINT

*# 80560*

Supervision Officer (PPO), Defendant CASSANDRA PETERSON has: (1) set up a November 1, 2018 date for Plaintiff to take a polygraph examination in violation of his Fifth Amendment right to be free from self-incrimination; (2) demanded that Plaintiff sign a release of information for a treatment facility that he voluntarily enrolled in aside from any PPS command against of his right to privacy and invasions of confidential and privileged information, in violation of his First, Ninth, and Fourteenth Amendment rights; and (3) commanded and directed that Plaintiff may only engage in religious activities at one specific church/religious denomination, in violation of his First and Fourteenth Amendment rights.

Secondly, Plaintiff alleges that Defendants have continued to retaliate against him for exercising his constitutional right to redress his grievances to the courts in violation of his First and Fourteenth Amendment rights. Plaintiff seeks monetary damages to be determined, restraining order, declaratory judgment and injunctive relief. Plaintiff requests a trial by jury and seeks an award of reasonable costs and attorneys' fees pursuant to 42 USC § 1988.

## JURISDICTION & VENUE

2.      This Court has jurisdiction over Plaintiff's claims of violation of federal constitutional rights, pursuant to 28 USC §§ 1331(a) and 1343; *Wilkinson v. Dotson,* 544 US 74 (2005); and *Potter v. Washington,* 2007 US Dist. LEXIS 67884 (D Or 9/10/07) (King, J.).

3.      Venue is properly before this Court pursuant to 28 U.S.C. § 1391(b), in that one or more of the defendants reside in the District of Oregon and Plaintiff's claims for relief arose in this district.

## PARTIES

4.      Plaintiff, RICHARD FERRY, at all times relevant is an inmate on PPS through the BPPPS in Washington County Community Corrections (WCCC), under

conditions of PPS which include, *inter alia*, mandatory polygraph examination participation and enrollment in and successful completion of a sex offender treatment program.

5.     Defendant, KEVIN DOOHAN, was at all times relevant a WCCC PPO in charge of, *inter alia*, overseeing and supervising inmates released from prison. He is directly involved in the acts and omissions alleged herein and is sued in his individual and official capacities.

6.     Defendant, CASSANDRA PETERSON, was at all times relevant a WCCC PPO in charge of, *inter alia*, overseeing and supervising inmates released from prison. She is directly involved in the acts and omissions alleged herein and is sued in her individual and official capacities.

7.     Defendant, BROOKE VICE, was at all times relevant a WCCC PPO in charge of, *inter alia*, overseeing and supervising inmates released from prison. She is directly involved in the acts and omissions alleged herein and is sued in her individual and official capacities.

8.     Defendant, JOE SIMICH, was at all times relevant the Assistant Director of the WCCC in charge of, *inter alia*, overseeing and supervising Defendant DOOHAN. He is directly involved in the acts and omissions alleged herein and is sued in his individual and official capacities.

9.     Defendant, STEVE BERGER, was at all times relevant WCCO Director, in charge of, *inter alia*, operations of the WCCO. He is directly involved in the acts and omissions alleged herein and is sued in his individual and official capacities.

10.     Defendants JOHN AND JANE DOES 1-20 were at all times relevant, employees of the (ODOC). They are directly involved in the acts and omissions alleged

herein and are sued in their individual and official capacities. Once Plaintiff learns the identities of said DOE DEFENDANTS through discovery, he will amend his complaint to replace their DOE designation with their correct and proper legal names and titles.

11.    At all times relevant all Defendants acted under "color of state law."

## FACTUAL ALLEGATIONS

12.    Plaintiff is currently on post-prison supervision (PPS) from Washington County Circuit Court convictions on charges of Sexual Abuse in the First Degree and Sexual Abuse in the Third Degree in Washington County Circuit Court Case No. C092400.

13.    Plaintiff is scheduled to be released from PPS on June 11, 2020.

14.    Plaintiff's mandatory supervision conditions included in the Board's Order include two that reference polygraph testing.

15.    First, the Order requires Plaintiff to "enter into and complete[] . . . a sex offender treatment program approved by the Board, supervisory authority, or supervisory officer." The sex offender treatment program "may include polygraphs and plethysmograph testing."

16.    Second, the Order requires "[p]articipation in random polygraph examinations to obtain information for risk management and treatment."

17.    The results of polygraph examinations under this condition "may not be used in a hearing to prove a violation of post-prison supervision."

18.    On October 1, 2018, Defendant PETERSEN sent Plaintiff an email stating:

> I am directing you to come in to sign ROI's [Release of Information] for Sequioa [Mental Health Services], Truth Verification Services, and Oregon Center for Change. Please stop in to sign them by Thur 10/4/18 and keep in mind this is a PO directive. We also need you to re-take your polygraph by no later than 11/01/18. All questions must be answered truthfully during the polygraph. If you are asked a "yes" or 'no' question you must answer "yes" or

"no". Refusal to fully participate in the polygraph will place you in violation. The department will subsidize this polygraph with the option for you to work off the cost by performing community service. Please contact Truth Verification 360-749-0738 to get the polygraph scheduled and keep in mind this is a PO directive to complete the polygraph re-take by 11/01/18.
Recently this directive was modified to a re-take date of 11/02/18.

### Privacy Allegations

19.    Plaintiff recently voluntarily enrolled in an anger management program at Sequioa Mental Health Services on his own apart from anything that Defendant's ordered him in an attempt to resolve issues he personally identified not tied to or correlated to his convictions.

20.    Plaintiff wanted to have a treatment facility that he could go to and enjoy a doctor – patient relationship without fear of anything he said used to deny him his liberty interests.

21.    Defendant PETERSEN gave a directive to sign a ROI to Sequioa so that Defendant PETERSEN could obtain private, confidential, and privileged information from Sequioa regarding Plaintiff.

22.    Plaintiff enjoys a Ninth and Fourteenth Amendment right to private, confidential, and privileged communication with his treatment/counseling providers at Sequioa Mental Health Services. *Jaffee v. Redmond*, 518 US 1, 15 (1996) and Whalen v. Roe, 429 US 589, 599-600 (1977). Plaintiff's medical and mental health records at Sequioa Mental Health Services contain intimate facts of a personal nature and are well within the realm of materials entitled to privacy protection.

23.    Defendant PETERSEN unconstitutionally compelled Plaintiff to relinquish his rights to private, confidential, and privileged communication with his treatment/counseling providers.

### Self-incrimination Allegations

24.    Defendant PETERSEN gave Plaintiff an order which will deny him the right to assert a Fifth Amendment right to be free from self-incrimination by directing him that he will only be allowed to answer questions during a polygraph examination with "Yes" or "No" answers.

25.    Plaintiff is in fear of future prosecution of crimes if he is not allowed to assert his Fifth Amendment privileges to answers asked by the polygrapher at Truth Verifications.

26.    While Plaintiff was in prison serving his sentence for the underlying criminal action, he was housed at the Oregon State Correctional Institution (OSCI).

27.    While Plaintiff served his time at OSCI, then inmate Jesse Campbell was also serving time on convictions arising out of convictions in Washington County Circuit Court Case No. C020764CR.

28.    Jesse Campbell was charged with Sexual Penetration in the First Degree with a Foreign Object (Count 1); Sexual Abuse in the First Degree (Counts 2, 4, 7, 8, 10, 12, and 14); Sodomy in the First Degree (Count 1, 6, 9, and 11); and Rape in the First Degree (Count 5) in Washington County Circuit Court Case No. C020764CR.

29.    Jesse Campbell was eventually convicted on Counts 1, 3, 6, 9, 11, and 13.

30.    After serving his time Jesse Campbell was release to the custody of the Washington County Community Corrections where Defendants JOE SIMICH and STEVE BERGER were in charge of overseeing his PPS.

31.    As Part of Jesse Campbell's PPS, he was required to "enter into and complete[] . . . a sex offender treatment program approved by the Board, supervisory authority, or supervisory officer." The sex offender treatment program "may include polygraphs and

plethysmograph testing."

32.    As Part of Jesse Campbell's PPS, he was required to "[p]articipation in random polygraph examinations to obtain information for risk management and treatment."

33.    The results of Jesse Campbell's polygraph examinations under this condition were "not to be used in a hearing to prove violation of post-prison supervision."

34.    Campbell participated in a full disclosure polygraph examination as Defendants required, and in that process Campbell disclosed further past criminal acts related to his then existing convictions and PPS in Washington County Circuit Court Case No. C020764CR.

35.    Defendants referred those disclosures to the Washington County District Attorney's office that proceeded with charges against Campbell.

36.    Washington County District Attorney's office informed Campbell that they were going to proceed with charges that would result in a life sentence for Campbell under ORS 137.719.

37.    As a result, Campbell chose to plead guilty to Attempted Sodomy in the First Degree instead of challenging the State's evidence at trial and risking life in prison under ORS 137.719

38.    Campbell received a prison term of 36-months based on disclosures in Defendant's mandated full-disclosure polygraph examination.

39.    Judicial Notice of the Campbell's secret indictment, plea petition, and judgment in *State of Oregon v. Jesse Campbell*, Washington County Circuit Court Case No. 17CR568835 is available to this Court.

40.    Based on what Plaintiff observed of Campbell's case and all of the interactions

Plaintiff has had with Defendants, he is in fear of future prosecution if he is compelled to participate in polygraph examinations.

### Religious Allegations

41.    Plaintiff has been a devote Catholic most of his adult life and his religious beliefs are closely held.

42.    Defendants have prohibited Plaintiff from attending mass at a Catholic church and instead informed him that he can only attend church at the Sonrise non-denominational church that is a derivative of the Sonrise Baptist Church.

43.    Plaintiff's desire to participate in Catholic mass are fully within the protection of the First and Fourteenth Amendments of the United States Constitution and reflect the exercise of the fundamental rights to freedom of belief and thought, freedom of speech, freedom of religion, the right of privacy, and freedom of association.

44.    The First Amendment prohibits the "establishment of religion" and may not give official sanction or sponsorship to a particular religious belief or to a religion.

### Supervisor Allegations

45.    Plaintiff notified Defendants JOE SIMICH and STEVE BERGER OF Defendants KEVIN DOOHAN and BROOKE VICE'S acts and omissions as alleged herein and asked them to intervene to stop the alleged allegations.

46.    Plaintiff sent Defendant JOE SIMICH an email that stated in pertinent part:

> I know your county lawyer told that I can only contact you through her but it isn't true especially when you have an employee of yours stepping all over and squashing my constitutional rights. I am going to ask you just this one time because Brooke seems to be onboard with allowing Cassandra Petersen to do it. I will not be extorted or coerced Joe.

Forcing me to retake the polygraph that I just paid $340 for 1 month ago means of extortion and coercion, and directing me to make it to a Nov. 2 polygraph retake that she set up the appointment for and never even bothered to see if I had anything going that day. Once more, extorting me to make it to that appointment.

I intend to find out what you have to say about this. If you believe she is well within her rights to be extorting me the way she is or if you do not reply I will take it as tacit admission....

Diana at Center for Change told me I was finished there. Apparently Cassandra and Brooke called her and told her I'm not. I am asking you to remedy this as well. Last I knew it was up to Center for Change to decide not Cassandra or Brooke.

Your silence will be admitting you are onboard with Cassandra stomping all over my constitutional rights.

47.    In response, Defendant JOE SIMICH returned and email stating:

If you have a problem with the polygraph, you're to take that up with Kim Stuart. I believe Cassandra has told you this.

Otherwise, I support Cassandra's directing you to take a polygraph and sign releases so that we can verify compliance with a referral.

48.    Instead of rectifying the alleged constitutional violations of KEVIN DOOHAN and BROOKE VICE, Defendants JOE SIMICH and STEVE BERGER have stood idly by and in fact have exacerbated them.

49.    Defendants JOE SIMICH and STEVE BERGER actions and inactions were affirmatively linked to the behavior in the sense that said actions could be characterized as supervisory encouragement, condonation, or acquiescence or gross negligence amounting to deliberate indifference.

**Retaliation Allegations**

50.    On January 25, 2018, Plaintiff, in *pro se*, filed his Verified Complaint For Emergency Temporary Restraining Order, Injunction And Permanent Injunction enjoining

Defendants from compelling him to participate in a scheduled February 6, 2018 polygraph examination.

51.    On February 5, 2018, this Court issued a Temporary Restraining Order (TRO).

52.    In that February 5, 2018 TRO, this Court found that "plaintiff has raised serious questions going to the merits of his claims [of Fifth and Fourteenth Amendment violations]."

53.    After briefing and a hearing, the District Court issued an Opinion and Order on March 6, 2018 dissolving the Temporary Restraining Order and denying Mr. Ferry's request for a preliminary injunction.

54.    Plaintiff subsequently filed an Amended Verified Complaint For Emergency Temporary Restraining Order, Injunction And Permanent Injunction

55.    This Court issued its Findings and Recommendation (F&R) on August 13, 2018, wherein the Court recommended:

  (a) That Plaintiff failed to allege facts supporting direct participation of Defendants Berger Berger and Lewis. (F & R, p 10).

  (b) That Plaintiff failed "to allege facts establishing a claim [by which relief] may be granted under § 1983 based upon the violation of his rights against self-incrimination under the Fifth Amendment. (F & R, p 11).

  (c) That Plaintiff failed "to state a claim upon which relief may be granted under § 1983 based upon a violation of his substantive due process rights. (F & R, p 12).

  (d) That Plaintiff established a claim of retaliation against County

Defendants for Plaintiff exercising his First Amendment rights to redress his grievances against a government agency. (F & R, p 13).

(e)     That Defendant Wu was entitled to absolute immunity. (F & R, p 14).

(f)     That Plaintiff "has not identified and/or completed service of process on John and Jane Doe Defendants." (F & R, p 15).

56.    On August 8, 2016, the Oregon Board of Parole (Board) issued its Order of Supervision Conditions. In that order, the Board instructed Plaintiff, in part, that he was subject to all General Conditions and to the following Special Conditions:

. . . .

10.    . . . (b) A prohibition against contacting a person under 18 years of age without prior written approval of the board, supervisory authority or supervising officer . . .

11.    Offender shall have no contact direct or indirect with those listed below: No contact with victim(s) Sandy Vu, and Cindy Vu or their family, including direct, indirect, second or third party contact...without prior written consent of the PO.

57.    Plaintiff prepared and submitted an administrative review arguing that Special Conditions 10 and 11 were beyond the scope and authority of the Board both statutorily and constitutionally.

58.    The Board rejected Plaintiff's arguments and Plaintiff pursued an appeal to the Oregon Court of Appeals. *See Richard Ferry v. Board of Parole and Post-Prison Supervision*, 293 Or App 216 (August 1, 2018).

59.    The Oregon Court of Appeals ultimately held that the Board exceeded its legal authority and reversed its Order as it related to Special Conditions 10 and 11.

60.    The Oregon Court of Appeals also noted that it was "skeptical" as to the constitutionality of Special Conditions 10 and 11 but did not reach those arguments because it

reversed on statutory grounds.

61.    Plaintiff's PPS conditions require Plaintiff to enter into and successfully complete a sex offender treatment program.

62.    Plaintiff was enrolled in and participated in sex offender treatment programs at the Center for Change at the directive of Defendants.

63.    Diana Groener, MA from Center for Change informed Plaintiff that he completed the program.

64.    Defendant BROOK VICE communicated with Groener that Plaintiff did not complete the program. As a result, Plaintiff was compelled to return to treatment at Center for Change.

65.    As a result of Plaintiff exercising his right to redress his grievances under the First and Fourteenth Amendments and this Court's February 5, 2018 TRO, Plaintiff has experienced and continues to experience retaliation by Defendants, in the form of:

        (1)    Requiring his returning to sex offender treatment despite being informed that he successfully completed it;

        (2)    Requiring him to only attend religious activities at a State sanctioned church;

        (3)    Prohibiting him from attending a church of his own choosing;

        (4)    Requiring him to sign ROI for access to his privileged medical and mental health records.

        (5)    Prohibiting him from exercising his Fifth Amendment right to refuse to answer questions that might incriminate him and expose him to future criminal during a polygraph examination.

66.    As a result of Plaintiff exercising his right to redress his grievances under the First and Fourteenth Amendments and the Oregon Court of Appeals August 1, 2018 decision Plaintiff has experienced and continues to experience retaliation by Defendants, in the form of:

(1)    Requiring his returning to sex offender treatment despite being informed that he successfully completed it;

(2)    Requiring him to only attend religious activities at a State sanctioned church;

(3)    Prohibiting him from attending a church of his own choosing;

(4)    Requiring him to sign ROI for access to his privileged medical and mental health records.

(5)    Prohibiting him from exercising his Fifth Amendment right to refuse to answer questions that might incriminate him and expose him to future criminal during a polygraph examination.

67.    As a result of Plaintiff exercising his right to redress his grievances under the First and Fourteenth Amendments and this Court's August 13, 2018 F & R Plaintiff has experienced and continues to experience retaliation by Defendants, in the form of:

(1)    Requiring his returning to sex offender treatment despite being informed that he successfully completed it;

(2)    Requiring him to only attend religious activities at a State sanctioned church;

(3)    Prohibiting him from attending a church of his own choosing;

(4)    Requiring him to sign ROI for access to his privileged medical and

mental health records.

(5)     Prohibiting him from exercising his Fifth Amendment right to refuse to answer questions that might incriminate him and expose him to future criminal during a polygraph examination.

68.     Defendants' direct and proximate threats of jailing Plaintiff have chilled his desire to assert his Fifth and Fourteenth Amendment rights to be free from unconstitutional compulsion in polygraph testing.

69.     Defendants' direct and proximate threats of jailing Plaintiff have chilled his desire to redress his grievances to the courts as guaranteed by the First and Fourteenth Amendments.

70.     Defendants' direct and proximate threats of jailing Plaintiff have chilled his desire participate in religious freedoms secured to him by the First and Fourteenth Amendments,

71.     Defendants' direct and proximate threats of jailing Plaintiff have chilled his desire to participate on mental health counseling for fear of having his privileged, private communications revealed.

72.     Defendants have already violated Plaintiff and required him to spend 3-days in jail.

73.     During that 3-day stay in jail Plaintiff was never fully lodged in and spent the entire 3-days in a holding cell where he had to sleep on the concrete floor, which in turn exacerbated the herniated discs in his back, as well as his neck and shoulder issues.

74.     Plaintiff will suffer immediate and irreparable injury, loss, or damage as a result to Defendant's actions as alleged herein.

## CLAIM FOR RELIEF

### First Claim for Relief: 42 U.S.C. § 1983
### Freedom of Association

75.    Plaintiff re-alleges each of the facts alleged in paragraphs 1 through 72, *supra*, and incorporates them herein by this reference.

76.    Defendants' actions in denying famalial association have unconstitutionally curtained Plaintiff's freedom of association rights as enunciated in the First and Fourteenth Amendment rights to the United States Constitution.

### Second Claim for Relief: 42 U.S.C. § 1983
### Right to Remain Silent

77.    Plaintiff re-alleges each of the facts alleged in paragraphs 1 through 72, *supra*, and incorporates them herein by this reference.

78.    Defendants' actions in compelling Plaintiff to participate in a polygraph test, and answers that may be given, in violation of his Fourteenth Amendment rights to the United States Constitution.

### Third Claim for Relief: 42 U.S.C. § 1983
### Retaliation

79.    Plaintiff re-alleges each of the facts alleged in paragraphs 1 through 72, *supra*, and incorporates them herein by this reference.

80.    Defendants' have retaliated against Plaintiff for exercising his right to redress his grievances as guaranteed by the First and Fourteenth Amendments to the United States Constitution.

81.    Defendants have retaliated against Plaintiff for exercising his right to remain silent as guaranteed by the Fifth and fourteenth Amendments to the United States Constitution.

82.    Defendants have retaliated against Plaintiff for asserting his right to privacy and confidentiality of his medical and mental health records as guaranteed by the First, Ninth, and Fourteenth Amendments to the United States Constitution.

83.    Defendants have retaliated against Plaintiff for exercise his chosen religious beliefs as guaranteed by the First and Fourteenth Amendments to the United States Constitution.

### Fourth Claim for Relief: 42 U.S.C. § 1983
### Freedom of Religion and Free Exercise of Religion

84.    Plaintiff re-alleges each of the facts alleged in paragraphs 1 through 72, *supra*, and incorporates them herein by this reference.

85.    Defendants' actions in directing what church Plaintiff may or may not attend are in violation of his First and Fourteenth Amendment rights to the United States Constitution.

### Fifth Claim for Relief: 42 U.S.C. § 1983
### Establishment of Religion

86.    Plaintiff re-alleges each of the facts alleged in paragraphs 1 through 72, *supra*, and incorporates them herein by this reference.

87.    Defendants' actions in directing what church Plaintiff may or may not attend have established a religion for Plaintiff are in violation of his First and Fourteenth Amendment rights to the United States Constitution.

### Sixth Claim for Relief: 42 U.S.C. § 1983
### Freedom of Association

88.    Plaintiff re-alleges each of the facts alleged in paragraphs 1 through 72, *supra*, and incorporates them herein by this reference.

89.    Defendants' actions in directing what church Plaintiff may or may not attend

have unconstitutionally curtailed Plaintiff's freedom of association rights as enunciated in the First and Fourteenth Amendment rights to the United States Constitution.

**Seventh Claim for Relief: 42 U.S.C. § 1983**
**Freedom of Thought and Belief**

90.    Plaintiff re-alleges each of the facts alleged in paragraphs 1 through 72, *supra*, and incorporates them herein by this reference.

91.    Defendants' actions in directing what church Plaintiff may or may not attend have unconstitutionally have denied Plaintiff his right to freedom of thought and belief as enunciated in the First, Ninth, and Fourteenth Amendment rights to the United States Constitution.

**Eighth Claim for Relief: 42 U.S.C. § 1983**
**Right to Privacy**

92.    Plaintiff re-alleges each of the facts alleged in paragraphs 1 through 72, *supra*, and incorporates them herein by this reference.

93.    Defendants' actions in directing Plaintiff to sign release of information so that Defendants may review his privileged and confidential medical and metal health records unconstitutionally have denied Plaintiff his right to privacy as enunciated in the First, Ninth, and Fourteenth Amendment rights to the United States Constitution.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays that this Court will enter a Judgment in his favor, and against Defendants, as follows:

A.    An emergency temporary restraining order and preliminary and permanent injunctions enjoining Defendants from compelling Plaintiff from participating in any polygraph tests as a condition of PPS, as guaranteed by the Fifth and Fourteenth

Amendments to the United States Constitution.

B.    An emergency temporary restraining order and preliminary and permanent injunctions enjoining Defendants from retaliating against Plaintiff for exercising his First, Fifth, Ninth, and Fourteenth Amendments to the United States Constitution.

C.    An emergency temporary restraining order and preliminary and permanent injunctions enjoining Defendants from denying Plaintiff his freedom of religion and freedom of association as guaranteed by the First and Fourteenth Amendments to the United States Constitution.

D.    An emergency temporary restraining order and preliminary and permanent injunctions enjoining Defendants from denying Plaintiff his right to privacy as guaranteed by the Ninth and Fourteenth Amendments to the United States Constitution.

E.    Issue a declaratory judgment stating that Defendants have and continue to violat Plaintiff's rights under the United States Constitutions in the manner and to the extent alleged herein.

F.    Issue an injunction permanently enjoining Defendants and their agents and employees from subjecting Plaintiff to conduct of the type and degree alleged herein.

G.    Grant Plaintiff compensatory damages for, among many things, the loss of wages and association in an amount to be determined.

H.    Grant Plaintiff non-economic compensatory damages for emotional distress, pain, mental suffering, humiliation, loss of comfort and companionship, impairment of reputation and future employment earning capacity in an amount to be determined.

I.    Grant Plaintiff punitive damages against Defendants, jointly and severally in an amount to be determined.

J.    Grant Plaintiff such other relief as is equitable and just.

**Pursuant to 28 U.S.C. § 1746(2), I hereby verify and declare under penalty of perjury that the foregoing is true and correct.**

DATED this 29th day of October, 2018.

Respectfully submitted, _Richard Ferry_

Richard Ferry
PO Box 91432
Portland, Oregon 97291
Ph: (503) 336-4913
        Plaintiff, *pro se*

Page 19 of 19 VERIFIED COMPLAINT

## CERTIFICATE OF SERVICE AND FILING

I hereby certify that I filed and served a true copy of the foregoing document on the following parties this ___29 th___ day of October, 2018, by placing all in a sealed envelope, postage prepaid and deposited the same in the U.S. Postal Service.

Alan A. Rapplyea, Washington County Counsel
155 North First Ave.
Hillsboro, Oregon 97124-3072, Suite 340

Richard Ferry
PO Box 91432
Portland, Oregon 97291
Ph: (503) 336-4913
    Plaintiff, *pro se*