IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RICHARD FERRY,

        Plaintiff,

v.

KEVIN DOOHAN, et al.,

        Defendants.

Civil No. 3:18-cv-01891-HZ

OPINION AND ORDER

    RICHARD FERRY
    P.O. Box 91432
    Portland, OR  97291

        Plaintiff *Pro Se*

    KIMBERLY A. STUART
    Assistant County Counsel
    Office of Washington County Counsel
    155 N. First Avenue
    Suite 340, MS #24
    Hillsboro, OR  97124

        Attorneys for Defendants

1 - OPINION AND ORDER -

HERNÁNDEZ, Judge.

Plaintiff brings this civil rights action *pro se*. Currently before the Court is Plaintiff's Motion for Preliminary Injunction[1] (ECF No. 2), which came before the Court for hearing on November 19, 2018. For the reasons that follow, the Court DENIES a preliminary injunction.

## BACKGROUND

Plaintiff is currently on post prison supervision ("PPS") from a Washington County Circuit Court conviction on charges of Sexual Abuse in the First Degree and Sexual Abuse in the Third Degree. This is the second civil rights action initiated by Plaintiff alleging violations of his constitutional rights in connection with the enforcement of the conditions of Plaintiff's PPS release as set forth in an August 8, 2016, Order issued by the Oregon Board of Parole and Post-Prison Supervision (the "Board"). In the first action, *Ferry v. Doohan*, Case No. 3:18-cv-00153-AC, this Court issued an Opinion and Order (ECF No. 22) denying Plaintiff's motion for preliminary injunction. The background facts from that Opinion and Order are incorporated herein by reference, and supplemented below as necessary.

In his current Motion, Plaintiff seeks an order enjoining Defendants from (1) requiring him to submit to a polygraph examination in violation of his Fifth Amendment right to be free from self-incrimination; (2) demanding that Plaintiff sign a Release of Information ("ROI") for records from a mental health treatment program in violation of Plaintiff's right to privacy under the First, Ninth, and Fourteenth Amendments; (3) prohibiting Plaintiff attending religious services at the church of

---

[1] Plaintiff also sought a temporary restraining order by the same motion, which Chief Judge Michael A. Mosman denied by his Order (ECF No. 5) of October 30, 2018.

his choice in violation of the First Amendment; and (4) retaliating against Plaintiff for exercising his right to redress his grievances with the Court under the First and Fourteenth Amendments.

## LEGAL STANDARDS

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008). "A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Id.* at 20 (emphasis added); *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). In the Ninth Circuit, assuming the other elements of the *Winter* test are met, a "sliding scale" approach may be taken and "[a] preliminary injunction is appropriate when a plaintiff demonstrates . . . that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor." *Alliance for the Wild Rockies*, 632 F.3d at 1131-35 ("'serious questions' approach survives Winter when applied as part of the four-element Winter test"). Where, as here, the plaintiff seeks a mandatory injunction that goes beyond maintaining the status quo, he must demonstrate that the facts and law clearly favor an injunction. *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015); *see also Am. Freedom Def. Initiative v. King Cty.*, 796 F.3d 1165, 1173 (9th Cir. 2015) (mandatory injunctions are disfavored and will not be entered in doubtful cases).

## DISCUSSION

### I.    Polygraph Examinations

Plaintiff alleges Defendants are violating his rights against self-incrimination by requiring him to submit to polygraph examinations as a condition of his release. For the reasons stated in the

Court's Opinion and Order denying a preliminary injunction in the prior action, the Court denies Plaintiff's current request. To the extent Plaintiff contends relief should be granted based on the alleged prosecution of another inmate for disclosures made in a PPS polygraph examination, the Court finds Plaintiff's citation to that case is not persuasive. Accordingly, Plaintiff has not established a likelihood of success on the merits of this claim. Moreover, Plaintiff has not demonstrated the likelihood of irreparable harm, as Plaintiff stated at the hearing on his Motion that he underwent and successfully passed a recent maintenance polygraph examination. Finally, the balance of equities and public interest continue to weigh against Plaintiff.

## II.  ROI For Mental Health Treatment Records

Plaintiff also seeks an injunction preventing Defendants from requiring Plaintiff to release information pertaining to mental health treatment provided Plaintiff at Sequoia Mental Health Services. Plaintiff alleges he enrolled in an anger management program at Sequoia "on his own apart from anything" required as sex offender treatment under the terms of his PPS release. He further alleges that his sex offender treatment provider concluded that Plaintiff fully complied with the release condition of "[e]ntry into and completion of or successful discharge from a sex offender treatment program approved by the board, supervisory authority or supervising officer." Plaintiff alleges the requirement that he release information from Sequoia violates his Ninth and Fourteenth Amendment rights to private, confidential, and privileged communication with his treatment providers.

Defendants, however, submit evidence that Plaintiff's treatment at Sequoia is an ongoing part of the sex offender treatment required under the conditions of his PPS release. Specifically, Defendant Vice expressed concern that Plaintiff's treatment at Sequoia "would not qualify as sex

offender treatment and that Sequoia as a mental health services provider, may not have sufficient training on sex offender related issues."

Plaintiff has not established a basis for preliminary injunctive relief on this claim. To the extent Plaintiff premises his claim on the Ninth Amendment, he fails to state a claim upon which relief may be granted and, perforce, cannot demonstrate a likelihood that he will prevail on the merits of his claim. See *Strandberg v. City of Helena*, 791 F.2d 744, 748 (9th Cir. 1986) ("the [N]inth [A]mendment has never been recognized as independently securing any constitutional right, for purposes of pursuing a civil rights claim") (citations omitted). Plaintiff fares no better under the Fourteenth Amendment. As a person on post-prison supervision, Plaintiff has a lower expectation of privacy. *Samson v. California*, 547 U.S. 843, 852 (2006).

Moreover, there is a factual dispute as to the status of Plaintiff's sex offender treatment. Defendants' declarations establish that their purpose in obtaining an ROI for Plaintiff's treatment records at Sequoia was to establish whether Plaintiff was complying with this requirement. As noted, Plaintiff contends he was "successfully discharged" from sex offender treatment and, therefore, that the Sequoia records are no longer relevant to the conditions of his release. Given the differing positions of the parties, the Court concludes Plaintiff has not demonstrated a likelihood of success on the merits on this claim. See *Int'l Molders' and Allied Workers' Local Union No. 164 v. Nelson*, 799 F.2d 547, 551 (9th Cir. 1986) ("[i]n deciding a motion for preliminary injunction, the district court is not bound to decide doubtful and difficult questions of law or disputed questions of fact") (internal citations omitted). Finally, Plaintiff has not established he is likely to establish irreparable harm as a result of the release of information (which he provided Defendants prior to the hearing), or that it would not be equitable or in the public's interest to continue their supervision.

### III.     Freedom of Religion

Plaintiff alleges he is a devoted Catholic and his religious beliefs are closely held. He alleges Defendants have prevented him from attending mass at a Catholic church and instead informed him he can *only* attend church services at the Sonrise non-denominational church. He alleges Defendants have thereby violated his right to free exercise of religion and his rights under the Establishment Clause.

Defendants submit evidence that on or about June 26, 2018, Plaintiff requested a modification of his PPS conditions to allow him to attend mass at his Catholic church. Defendant Vice explained to Plaintiff that once he was in compliance with the terms and conditions of his PPS, she would be willing to speak to an authorized representative of Plaintiff's church to develop an acceptable safety plan. Defendant Vice states that safety plans are developed between the sex offender treatment provider, the parole officer, and the client. At the time Plaintiff made his request to attend church, Vice states that Plaintiff was not in compliance with the terms of his release which in turn raised barriers to the creation of a safety plan, as Plaintiff still had unresolved full-disclosure polygraph issues, and refused to participate in answering questions.

At the hearing, Plaintiff stated that Defendants will not allow Plaintiff to attend Catholic mass unless and until Plaintiff admits culpability for his crimes, which he refuses to do because he maintains his innocence. Plaintiff further argued that Defendants' position that he is not in compliance with the conditions requiring sex offender treatment is contradicted by the sex offender treatment provider's statement that he was "successfully discharged" from treatment.

Defendant Vice also states that sex offender clients may generally attend Sonrise Church, a non-denominational church, but a safety plan would still be required. At the hearing, Plaintiff

countered that other sex offenders under PPS supervision routinely attended services at Sonrise without a safety plan, though Plaintiff did not present evidence to substantiate this statement. Plaintiff also stated that Defendants at no time mentioned the need for a safety plan before he would be allowed to attend services at Sonrise.

The Free Exercise Clause of the First Amendment "withdraws from legislative power, state and federal, the exertion of any restraint on the exercise of religion." *Abington School Dist. v. Schempp*, 374 U.S. 203, 222-23 (1963). A free exercise inquiry "asks whether government has placed so substantial a burden on the observation of a central religious belief or practice and, if so, whether a compelling government interest justifies the burden." *Hernandez v. Commissioner*, 490 U.S. 680, 699 (1989).

As a convicted sex offender, Plaintiff does not enjoy the same level of freedom accorded others in society:

> [P]arolees and other conditional releasees are not entitled to the full panoply of rights and protections possessed by the general public. Quite to the contrary, the Court has recognized that "those who suffered a lawful conviction" are properly subject to a "broad range of [restrictions] that might infringe constitutional rights in free society."

*United States v. Kinkade*, 379 F.3d 813, 833-34 (9th Cir. 2004) (quoting *McKune v. Lile*, 536 U.S. 24, 36 (2002)) (footnote omitted). Although Plaintiff is not necessarily entitled to the same level of constitutional rights as the rest of the citizenry, however, "claims of civil rights violations are not completely closed to him." *Burchett v. Bromps*, Case No. CV-07-00346-JLQ, 2008 WL 5000242, at *3 (E.D. Wash. Nov. 20, 2008), *rev'd on other grounds*, 380 Fed. Appx. 568 (9th Cir. 2010).

The terms of Plaintiff's PPS include a "prohibition against being present more than one time, without the prior written approval of the board, supervisory authority or supervision officer, at a

place where persons under 18 years of age regularly congregate." As Defendant Vice notes, Plaintiff may obtain permission to attend Catholic services upon implementation of a safety plan with his parole officer and a representative of the church.

The limitations placed on Plaintiff by his PPS conditions of release do not represent a substantial burden on the observation of a central religious belief or practice. *See Burchett*, 2008 WL 5000242, at *3 (limitation requiring sex offender parolee to seek permission to attend church services "cannot be considered anything more than an inconvenience"). Moreover, the government has a compelling interest in making sure the community is protected from pedophile sex offenders. *Id*.; *see also Hunter v. Trautwein*, Case No. 05-215-ST, 2006 WL 3463441, at *7 (D.Or. Nov. 28, 2006) (no evidence of constitutional violation where conditions of release required sex offender parolee to obtain approval from parole officer to attend church services).

To the extent Plaintiff argues Defendants are improperly withholding permission because they incorrectly deem he is not in compliance with the requirement for sex offender treatment, in light of the factual dispute over what constitutes "compliance" and whether Plaintiff has satisfied those requirements, Plaintiff has not established a likelihood of success on the merits of his free exercise claim.[2]

Under the Establishment Clause of the First Amendment, "[n]either a state nor the Federal Government . . . can force nor influence a person to go to or to remain away from church against his

---

[2] The Court notes that Defendant Vice also identified Plaintiff's continued denial of his offenses as a factor in his non-compliance which prevented formulation of a safety plan. The Court finds it unlikely that the state could require a sex offender to admit his offenses before allowing even the consideration of a safety plan to attend church, but notes that, in any event, there are sufficient questions of fact as to the other issues of Plaintiff's compliance such that he has not established a substantial likelihood of success on the merits.

will or force him to profess a belief in any religion." *Everson v. Board of Education of Ewing Township*, 330 U.S. 1, 15-56 (1940). "It is beyond dispute that, at a minimum, the Constitution guarantees that government may not coerce anyone to support or participate in religion or its exercise." *Lee v. Weisman*, 505 U.S. 577, 587 (1982). In the Ninth Circuit, to determine whether there was government coercion of religious activity, the mode of inquiry is "as follows: 'first, has the state acted; second, does the action amount to coercion; and third, is the object of the coercion religious rather than secular.'" *Inouye v. Kemna*, 504 F.3d 705, 713 (9th Cir. 2007) (quoting *Kerr v. Farrey*, 95 F.3d 472, 479 (7th Cir. 1996)).

Here, Plaintiff alleges Defendants told him he could *only* attend church services at Sonrise, but Defendants present evidence to the contrary. Again, in light of the disputed facts on this claim, the Court finds Plaintiff has not established a likelihood of succeeding on the merits of his claim that Defendants are violating his rights under the Establishment Clause. Moreover, Plaintiff has not established he will suffer irreparable harm, that the balance of equities tip in his favor, or that a mandatory injunction would be in the public's interest.

## IV. Retaliation

Finally, Plaintiff alleges Defendants are retaliating against him for exercising his right to redress his grievances by prohibiting Plaintiff from associating with his son and members of his wife's family. The Oregon Court of Appeals recently addressed the conditions of Plaintiff's supervision pertaining to contact with his son and his in-laws. In *Ferry v. Board of Parole and Post-Prison Supervision*, 293 Or. App. 216, 427 P.3d 1123 (2018), the court noted Plaintiff's challenge to the condition prohibiting contact with his minor son was moot, as his son reached majority while the case was pending. *Id*. at 219. The court further found that the Board erred as a

matter of law in applying a restriction on contact with Plaintiff's wife's family, and reversed and remanded the case for further consideration by the Board. *Id.* Because the restrictions on Plaintiff's contact with his son and wife's family are no longer in effect, no injunctive relief is necessary. Moreover, Plaintiff's remedy for the alleged *prior* denial of familial association would appropriately be in the form of damages and, as such, Plaintiff cannot establish that he is likely to suffer irreparable harm in the absence of preliminary relief. *See Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991) (irreparable harm for the purposes of a preliminary injunction is traditionally defined as harm for which there is no adequate legal remedy, such as an award of damages).

## **CONCLUSION**

For these reasons, the Court DENIES Plaintiff's Motion for Preliminary Injunction (ECF No. 2).

IT IS SO ORDERED.

DATED this 28 day of November, 2018.

Marco A. Hernández
United States District Judge