IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RICHARD FERRY,

        Plaintiff,

    v.

KEVIN DOOHAN, Washington County
Community Corrections (WCCC) Post-
Prison Supervision Officer (PPO);
CASSANDRA PETERSON, WCCO PPO;
BROOKE VICE, WCCO PPO; JOE SIMICH,
WCCO, Assistant Director; and
JOHN AND JANE DOES 1-20,

        Defendants.

Civil No. 3:18-cv-001891-HZ

OPINION AND ORDER

HERNÁNDEZ, Chief District Judge:

Plaintiff brings this civil rights action pursuant to 42 U.S.C. § 1983 *pro se*. Currently

before the Court is Defendants' Motion to Dismiss Pursuant to FRCP 12(b)(6) (ECF No. 26).[1]

For the reasons that follow, the Court GRANTS Defendants' Motion to Dismiss Plaintiff's

Complaint.

---

[1]Plaintiff has also filed a Motion for Partial Summary Judgment (ECF No. 49). Because
the Court grants Defendants' Motion to Dismiss, the Court does not separately address Plaintiff's
Motion.

## BACKGROUND

Plaintiff is currently on post-prison supervision ("PPS") from a Washington County Circuit Court conviction on charges of Sexual Abuse in the First and Third Degree.    On August 8, 2016, the Oregon Board of Parole and Post-Prison Supervision (the "Board") issued an Order mandating the conditions of Plaintiff's supervised release.    The Board's Order includes a standard set of supervision conditions referred to as "Sex Offender Package A," as required by Or. Rev. Stat. § 144.102(4)(b).    The supervision conditions include requirements that plaintiff undergo polygraph testing to assist in treatment and to obtain information for risk management, and to participate in sex offender treatment.    The supervision conditions also prohibit Plaintiff from having any contact with minors without prior written approval.

Plaintiff's Complaint alleges Defendants violated his rights in enforcing the supervision conditions of his post-prison supervision.    First, Plaintiff alleges Defendants violated his freedom of association rights under the First and Fourteenth Amendments by denying Plaintiff "familial association."    Second, Plaintiff alleges Defendants compelled him to undergo a polygraph test, in violation of his Fifth and Fourteenth Amendment rights against self-incrimination.

In his third claim, Plaintiff alleges Defendants retaliated against Plaintiff for exercising his right to redress grievances as guaranteed under the First and Fourteenth Amendments, for asserting his right to remain silent under the Fifth and Fourteenth Amendments, for asserting his right to privacy under the First, Ninth, and Fourteenth Amendments, and for asserting his right to free exercise of religion under the First and Fourteenth Amendments.    Plaintiff alleges Defendants retaliated against him as follows:    (1) by requiring Plaintiff to return to sex offender treatment despite being informed that he successfully completed it; (2) by requiring him to attend religious

2  - OPINION AND ORDER

activities only at a state-sanctioned church and prohibiting him from attending a church of his own choosing; (3) by requiring Plaintiff to sign an Release of Information for access to his privileged medical and mental health records; and (4) by prohibiting Plaintiff from exercising his Fifth Amendment right to refuse to answer questions during a polygraph examination.

Plaintiff's fourth, fifth, sixth, and seventh claims allege violation of his right to religious freedom and freedom of association. Plaintiff alleges Defendants prohibited him from attending mass at a Catholic Church and instead informed him he can only attend church services at a specified non-denominational church in violation of Plaintiff's First and Fourteenth Amendment rights.

Finally, Plaintiff's eighth claim alleges Defendants violated his right to privacy under the First, Ninth, and Fourteenth Amendments by directing Plaintiff to sign a Release of Information for Plaintiff's privileged and confidential medical and mental health records.

Defendants move to dismiss Plaintiff's Complaint for failure to state a claim upon which relief may be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure on several bases. In response to Defendants' motion, Plaintiff filed a Motion for Partial Summary Judgment addressing only his claim that Defendants deprived Plaintiff of his right to familial association. Plaintiff does not address his remaining claims for relief.

## LEGAL STANDARDS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the claims. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Am. Family Ass'n, Inc. v. City & Cnty. of S.F.*, 277 F.3d 1114, 1120 (9th Cir. 2002). To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face[,]" meaning "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). In other words, a complaint must contain "well-pleaded facts" that "permit the court to infer more than the mere possibility of misconduct[.]" *Id*. at 679.

The court need not accept conclusory allegations as truthful. *See Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) ("[W]e are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint, and we do not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations.") (internal quotation marks, citation, and alterations omitted). A motion to dismiss under Rule 12(b)(6) will be granted if a plaintiff alleges the "grounds" of his "entitlement to relief" with nothing "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]" Id. (citations and footnote omitted).When considering a Rule 12(b)(6) motion, a court generally limits review to the

contents of the complaint. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *amended by* 275 F.3d 1187 (9th Cir. 2001). A court may, however, "consider certain materials documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

Courts must liberally construe *pro se* pleadings. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). Additionally, a court cannot dismiss a *pro se* complaint without first explaining to the plaintiff the deficiencies of the complaint and providing an opportunity to amend. *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992). Dismissal of a *pro se* complaint without leave to amend is proper only if it is clear that the deficiencies of the complaint could not be cured by amendment. *Lucas v. Department of Corrections*, 66 F.3d 245, 248 (9th Cir. 1995).

## DISCUSSION

I.    **Self-Incrimination**

Plaintiff alleges Defendant Peterson gave him an order denying Plaintiff the right to assert a Fifth Amendment privilege against self-incrimination by directing Plaintiff that he would only be allowed to answer questions during a polygraph examination with "Yes" or "No" answers. Plaintiff asserts he is in fear of future prosecution of crimes if he is not allowed to assert his Fifth Amendment privilege.

Plaintiff asserted a similar claim in an action he filed prior to this one, *Ferry v. Doohan*, Case No. 3:18-cv-00153-AC. There, this Court issued an Opinion and Order denying Plaintiff's Motion for Preliminary Injunction on this issue, Magistrate Judge John V. Acosta issued a Findings and Recommendation recommending dismissal of the claim for failure to state a claim upon which

relief may be granted, and this Court issued an Order adopting Judge Acosta's Findings and Recommendation and dismissing the claim.[2]    *Ferry v. Doohan*, Case No. 3:18-cv-00153-AC, Docket Entries 22, 40, and 54.[3]

  For the reasons set forth in the decisions in Case No. 3:18-cv-00153-AC, Plaintiff fails to state a claim that Defendant Peterson violated his Fifth Amendment privilege against self-incrimination.    The Fifth Amendment rights against compelled self-incrimination applies only when a compelled statement is used against a defendant in a criminal case.    *United States v. Hulen*, 879 F.3d 1015, 1018 (9th Cir.), *cert. denied*, 139 S. Ct. 251 (2018).    To the extent Plaintiff's Complaint alleges he may be subject to revocation of release, he does not state a claim upon which relief may be granted.    The mere threat of revocation of post-prison supervision for refusing to undergo a polygraph examination does not violate the Fifth Amendment right against self-incrimination.    *See Id*. a 1021-22 (because a proceeding to revoke supervised release is not a "criminal case" for the purposes of the Fifth Amendment, the right against self-incrimination did not prevent the use of the plaintiff's admissions in a polygraph examination to revoke his supervised release).    Moreover, Oregon law provides that where a defendant is required as a condition of post-prison supervision to participate in "random polygraph examination to obtain

---

[2] The Ninth Circuit Court of Appeals affirmed the denial of Plaintiff's Motion for Preliminary Injunction.    *Ferry v. Doohan*, Case No. 3:18-cv-00153-AC, Docket Entry 57.

[3] The sole remaining issue pending in that action is Plaintiff's claim in his Amended Complaint that the Defendants unlawfully retaliated against Plaintiff for filing that action and seeking preliminary injunctive relief.    *Ferry v. Doohan*, Case No. 3:18-cv-00153-AC, Docket Entry No. 54.

information for risk management and treatment," the results of those polygraphs "may not be used in evidence in a hearing to prove a violation of parole."    Or. Rev. Stat. § 104.270(4)(b)(J).

Plaintiff also does not allege facts sufficient to establish a reasonable fear that he may be subject to future prosecution based on his responses to a polygraph examination.    In *United States v. Antelope*, 395 F.3d 1128 (9th Cir. 2005), the Ninth Circuit upheld the plaintiff's right to refuse to answer questions in a polygraph examination where the court found "no doubt" that the answer would be used to incriminate the plaintiff in a pending or later criminal prosecution.    The court's analysis in *Antelope* "was driven by the threat of a new prosecution."    *Hulen*, 879 F.3d at 1020-21.

Here, Plaintiff alleges he is in fear of future prosecution for new crimes based on the unrelated criminal prosecution of a different inmate.    Plaintiff does not, however, allege that he was personally subjected to subsequent criminal prosecution or that anything he has disclosed during a polygraph examination has been disclosed to a criminal prosecutor.    Plaintiff does not allege any facts establishing that there is any possibility of future criminal prosecution, let alone that there is "no doubt" his answers would be used against him.

Finally, in the absence of criminal prosecution, a plaintiff cannot obtain damages under § 1983 for the alleged violation of Fifth Amendment self-incrimination rights.    *See Chavez v. Martinez*, 538 U.S. 760, 767 (2003) (plurality holding that a defendant police officer was entitled to qualified immunity in a § 1983 action for damages alleging violation of the plaintiff's Fifth Amendment right against self-incrimination where the officer questioned the plaintiff and obtained admissions of criminal culpability, but no criminal charges were ever pursued); *Farmer v. Youhas*, 525 Fed. Appx. 547, at *1 (9th Cir. 2013) (citing *Chavez* and finding that district court properly

granted summary judgment in § 1983 civil rights action on Fifth Amendment claim where plaintiff presented no evidence that statements he made during polygraph examination were used against him in a criminal proceeding).    Because Plaintiff does not allege facts establishing he was subjected to criminal charges, his claim for damages under § 1983 fails.

## II.    Religious Claims

In his fourth, fifth, sixth, and seventh claims, Plaintiff contends Defendants have unconstitutionally deprived him of his religious freedom and association rights.    Plaintiff alleges Defendants prohibited him from attending Catholic mass and required him instead to attend a non-denominational service in violation of both his right to freedom of exercise of religion and in violation of the Establishment Clause.

### A.    Freedom of Exercise and Association

Plaintiff alleges Defendants violated his First Amendment right to freedom of religion and association by refusing to allow him to attend Catholic mass and by "directing what church Plaintiff may or may not attend."    The Free Exercise Clause of the First Amendment "withdraws from legislative power, state and federal, the exertion of any restraint on the exercise of religion." *Abington School Dist. v. Schempp*, 374 U.S. 203, 222-23 (1963).    A free exercise inquiry "asks whether government has placed so substantial a burden on the observation of a central religious belief or practice and, if so, whether a compelling government interest justifies the burden." *Hernandez v. Commissioner*, 490 U.S. 680, 699 (1989).

As a convicted sex offender, Plaintiff does not enjoy the same level of freedom accorded others in society:

> [P]arolees and other conditional releasees are not entitled to the full panoply of
> rights and protections possessed by the general public.    Quite to the contrary, the

> Court has recognized that "those who suffered a lawful conviction" are properly subject to a "broad range of [restrictions] that might infringe constitutional rights in free society."

*United States v. Kinkade*, 379 F.3d 813, 833-34 (9th Cir. 2004) (quoting *McKune v. Lile*, 536 U.S. 24, 36 (2002)) (footnote omitted).    Although Plaintiff is not necessarily entitled to the same level of constitutional rights as the rest of the citizenry, however, "claims of civil rights violations are not completely closed to him."    *Burchett v. Bromps*, Case No. CV-07-00346-JLQ, 2008 WL 5000242, at *3 (E.D. Wash. Nov. 20, 2008), *rev'd on other grounds*, 380 Fed. Appx. 568 (9th Cir. 2010).    The test for validity of probation conditions is (1) whether the conditions were imposed for permissible purposes and (2) whether the conditions are reasonably related to the purposes. *U.S. v. Terrigno*, 838 F.2d 371, 374 (9th Cir. 1988).    Merely because a condition is a restriction is not "dispositive of the reasonableness of the condition," but a restriction may not be drawn "so broadly" as to "unnecessarily restrict otherwise lawful activities" that are permissible.    *Id*.

The terms of Plaintiff's PPS include a "prohibition against being present more than one time, without the prior written approval of the board, supervisory authority or supervision officer, at a place where persons under 18 years of age regularly congregate." This limitation reasonably relates to the purpose of protecting minors from sex offenders; it does not represent a substantial burden on the observation a central religious belief or practice.  *See Burchett*, 2008 WL 5000242, at *3 (limitation requiring sex offender parolee to seek permission to attend church services "cannot be considered anything more than an inconvenience").    Moreover, the government has a compelling interest in making sure the community is protected from pedophile sex offenders.    *Id*.; *see also Hunter v. Trautwein*, Case No. 05-215-ST, 2006 WL 3463441, at *7 (D. Or. Nov. 28, 2006) (no evidence of constitutional violation where conditions of release required sex offender

parolee to obtain approval from parole officer to attend church services).    Accordingly, Plaintiff does not state facts establishing a claim that defendants violated his freedom of exercise of religion and association.

### B.    Establishment Clause

Under the Establishment Clause of the First Amendment, "[n]either a state nor the Federal Government . . . can force nor influence a person to go to or to remain away from church against his   will or force him to profess a belief in any religion."   *Everson v. Board of Education of Ewing Township*, 330 U.S. 1, 15-16 (1940).   "It is beyond dispute that, at a minimum, the Constitution guarantees that government may not coerce anyone to support or participate in religion or its exercise."   *Lee v. Weisman*, 505 U.S. 577, 587 (1982).   Conduct remains subject to regulation under the Establishment Clause, however, for the protection of society.    *Cantwell v. Connecticut*, 310 U.S. 296, 303-04 (1940).     In the Ninth Circuit, the basic test for Establishment Clause violations requires that government actions (1) not have a "secular legislative purpose," (2) not have a "principal or primary effect" which either "advances [or] inhibits religion," and (3) not foster "an excessive government entanglement."   *Inouye v. Kemna*, 504 F.3d 705, 712-13 (9th Cir. 2007) (citing *Lemon v. Kurtzman*, 403 U.S. 602, 613 (2002)).

Here, Defendant's action in providing an alternative, non-denominational option for Plaintiff to attend church services is the challenged government action.    Plaintiff does not allege facts establishing that there is a secular purpose for this option and he does not allege that he ever took the steps necessary to obtain permission to attend Catholic mass.    In any event, the principal effect of such a condition is not to impose a particular religion, but to regulate conduct for the

safety of the congregation.    Finally, the restriction does not foster excessive government entanglement.    Accordingly, Plaintiff's Establishment Clause claim must be dismissed.

## II.    Right to Privacy

Plaintiff's eighth claim alleges Defendants violated his right to privacy under the First, Ninth, and Fourteenth Amendments when they directed him to sign a Release of Information for his confidential and privileged medical and mental health records.    The Ninth Amendment "has never been recognized as independently securing any constitutional rights cognizable in civil rights litigation." *Strandberg v. City of Helena*, 791 F.2d 744, 748 (9th Cir. 1986).    Accordingly, Plaintiff cannot state a claim upon which relief may be granted under the Ninth Amendment. Moreover, Plaintiff does not allege facts establishing an independent Fourteenth Amendment "right to privacy" claim.    As a matter of federal law, state parolees retain only limited rights to privacy.    *Mark v. Martinez*, Case No. 2:09-cv-03583 KJN P, 2010 WL 5136167, at *2 (E.D. Cal. Dec. 10, 2010) (citing *Motley v. Parks*, 432 F.3d 1072, 1083 (9th Cir. 2005) and *Griffin v. Wisconsin*, 483 U.S. 868, 873 (1987)).    In addition, while parolees have a due process liberty interest in their continued release and thus are entitled to certain procedural protections before their parole may be revoked, Plaintiff does not articulate how this interest may have been impacted by direction that he sign a Release of Information.    *Id*.; *Morrisey v. Brewer*, 408 U.S. 471, 482 (1972).    Accordingly, Plaintiff's eighth claim of violation of his right to privacy must be dismissed.

## IV.    Familial Association

In his Complaint, Plaintiff alleges "Defendants' actions in denying famalial [sic] association have unconstitutionally curtained [sic] Plaintiff's freedom of association rights as enunciated in the First and Fourteenth Amendments."   However, the only factual allegation pertaining to this claim appears as follows:

> 56.    On August 8, 2016, the Oregon Board of Parole (Board) issued its Order of Supervision Conditions.   In that order, the Board instructed Plaintiff, in part, that he was subject to all General Conditions and to the following Special Conditions:
>
> * * *
>
> 10.    . . .(b) A prohibition against contacting a person under 18 years of age without prior written approval of the board, supervisory authority or supervising officer   . . .
>
> 11.    Offender shall have no contact direct or indirect with those listed below:   No contact with victim(s) [SV] and [CV] or their family, including direct, indirect, second or third party contact . . . without prior written consent of the PO.[4]

Plaintiff does not allege any facts pertaining to any action taken by any Defendant to enforce these conditions.[5]   As such, Plaintiff's Complaint fails to allege facts stating a claim for denial of familial relations upon which relief may be granted under § 1983.   *See Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989); *Johnson v. Duffy*, 588 F.2d 740, 743–44 (9th Cir. 1978) (an individual defendant is not liable on a civil rights claim unless the facts establish the defendant's personal

---

[4]Plaintiff further alleges he sought administrative review of these conditions, which was denied, and that on appeal therefrom the Oregon Court of Appeals ultimately held that the Board exceeded its legal authority to impose these conditions.   *Ferry v. Board of Parole and Post-Prison Supervision*, 293 Or. App. 216 (2018).

[5]In his response to Defendants' motion Plaintiff discusses at length actions allegedly taken by various individual Defendants regarding Plaintiff's contact with his wife, his son, and other family members.   None of these allegations, however, appear in the Complaint.

involvement in the constitutional deprivation or a causal connection between the defendant's wrongful conduct and the alleged constitutional deprivation).

## V.    Retaliation

Plaintiff alleges Defendants retaliated against him for exercising his right to redress his grievances (specifically for prosecuting this action and for exercising his appellate rights in the state courts), for exercising his right to remain silent, for asserting his right to privacy, and for exercising his chosen religious beliefs.    To establish a claim for retaliation in the context of parole or post-prison supervision, a plaintiff must prove that (1) that he took a constitutionally protected action, (2) that he was retaliated against for exercising those rights, and (3) the alleged retaliation does not advance legitimate penological goals.    *Trautwein*, 2006 WL 3463441, at *6 (citing *Bruce v. Ylst*, 351 F.3d 1283, 1288 (9th Cir. 2003) and *Wilson v. City of Fountain Valley*, 372 F.Supp.2d 1178, 1188-89 (C.D. Cal. 2004)).    There must be causal connection between the alleged retaliatory conduct and the action that purportedly provoked the retaliation.    *Buckley v. Gomez*, 36 F.Supp.2d 1216, 1226 (S.D. Cal. 1997), *aff'd*, 168 F.3d 498 (9th Cir. 1999).

To the extent Plaintiff alleges Defendants retaliated against him for exercising his right to remain silent, assert his right to privacy, and exercise his chosen religious beliefs, as discussed above, Plaintiff has not alleged facts establishing any such constitutionally protected right. Moreover, while Plaintiff retains the right to seek redress for grievances in the form of prosecuting this action and his state court appeal, Plaintiff does not allege facts establishing that the alleged retaliatory actions do not advance legitimate penological goals.    All of the actions Plaintiff's complained of were directly related to enforcement of the terms of Plaintiff's PPS as directed by the Board's Order.    Accordingly, Plaintiff's retaliation claim must be dismissed.    *See Bruce*, 351

F.3d at 1283 (the plaintiff bears the burden of pleading and proving the absence of legitimate penological goals for the conduct of which he complains).

**VIII.   Qualified Immunity**

The defense of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."   *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).   To determine whether an official is entitled to qualified immunity, a court must decide whether the facts alleged show the official's conduct violated a constitutional right; and, if so, whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.   *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001); *see also Pearson v. Callahan*, 555 U.S. 223 (2009) (overruling *Saucier's* requirement that qualified immunity analysis proceed in a particular sequence).   "[I]f no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity."   *Saucier*, 533 U.S. at 201.

Here, as discussed above, Plaintiff's Complaint does not allege facts sufficient to establish a violation of his constitutional rights.   Accordingly, Defendants prevail on the first prong of the *Saucier* test.   As a matter of law, Defendants are entitled to qualified immunity.

## CONCLUSION

For these reasons, the Court GRANTS Defendants' Motion to Dismiss (ECF No. 26) and

////////////////////////////////////////////////////////////

////////////////////////////////////////////////////////////

14  - OPINION AND ORDER

DENIES Plaintiff's Motion for Partial Summary Judgment (ECF No. 49).    Because the Court finds that Plaintiff cannot cure the deficiencies of his Complaint by amendment, the Court does not grant Plaintiff leave to file an Amended Complaint.

IT IS SO ORDERED.

DATED this ____31____ day of May, 2020.


                                    ____s/ *Marco Hernandez*_____
                                         Marco A. Hernández
                                         Chief United States District Judge

15  - OPINION AND ORDER